Upon a rule for a new trial.
This was an action on the case, with a special count, stating the sale of a land warrant of 640 acres, for the consideration of $500, which afterwards was preferred to the board authorized to judge of the validity of laud warrants; that the warrant was declared invalid and void, whereby the defendant became liable to pay the consideration, and assumed upon himself, c.
There was also a count for money had and received. It appeared in evidence that the defendant had given his bond in consequence of the receipt of the $500, to the plaintiff, to transfer him a warrant for 640 acres; that the plaintiff applied to him for the warrant, upon which he obtained one of William Lytle, which was assigned by Lytle to the plaintiff, and thereupon the plaintiff gave up to the defendant the bond which he had on him. It also appeared that neither the plaintiff, the defendant, nor Lytle had the least suspicion that the warrant was invalid. There was therefore no ground to impute fraud or any unfairness in the transaction.
In the argument of counsel it was conceded that a warrant for land was an unnegotiable chose in action. It was an obligation given by the State of North Carolina, to make a grant for the quantity of land specified in it, and similar to the obligation of an individual to convey lands, or perform any other specific thing.
The history of the assignment of unnegotiable paper has been given with much correctness and perspicuity, by Buller, J., in 4 Term Rep. 340. By the common law, ordinary bonds or obligations were not assignable;[1]
but for a valuable consideration they were sustained in equity at all times. 2 Wooddes. 388. The case in 4 Term Rep. 340, together with many others to be found in the late reporters, show clearly, that, in modern times, the courts, in England are approaching to the good sense of the rule long since established *Page 439 
in equity. They consider the assignee as having an interest in the demand, and will not, where a suit is pending in court for the use of such person, permit the assignor to intermeddle with it, or in any manner to extinguish the demand.[2] So far have they gone in the common-law courts in England in relaxing the original principles, but no further. After this decision, the legislature of that country had as well have gone the whole length of authorizing the transfer or sale of such choses in action, in the same manner that the common law, in common with those of every other nation, recognizes the sale of any other property. The reasons given by law-writers, why choses inaction were not allowed to be assigned, were, that it encouraged litigation, by claims of this kind getting into the hands of others, of a more litigious disposition, and of greater weight and influence in society, "whereby (saith Lord Coke) justice might be trodden down." A very unsatisfactory reason indeed, in any country, but perfectly unintelligible in one of equal laws and liberty. The opinion of the Court of Chancery, with the present practice in the other English courts, demonstrate, that, if ever there was any reason for the rule, it has ceased as it respects personal demands.
Our Act of 1801, c. 6, § 54, has expressly said what is implied from the adjudication of the English judges, that it is lawful to sell or transfer common choses in action. "Suits (says the act) may hereafter be brought both in courts of law and equity, in the names of assignees of bonds, with collateral conditions, bills or notes for specific articles, or the performance of any duty."
Agreeably to the common law, an assignee acquired no kind of interest, — he was forbidden to acquire such interest. Therefore, the assignment did not operate any thing, it were the same thing as if a blank stood in its place. When courts of equity recognized assignments for valuable consideration, it was cautiously done; they did not proceed on principles analogous to those governing bills of exchange and other negotiable choses in action. In these transactions the assignor is liable for the amount of the bill, if not to be had of the drawee. They *Page 440 
decided that the assignee took an unnegotiable paper subject to every equity and objection that might be sustained against it, in the hands of the obligee.[1] This principle is not affected by our act, which only authorizes an assignee to maintain an action in his own name. The act legalizes the acquisition by the assignee, and there it stops.
This being the state of things, we will proceed to examine the general principles to be found in the books respecting the action for money had and received, and see whether any of those principles cover the case before the Court.
The science of law is much indebted to the distinguished talents of Lord Mansfield, for having brought this useful form of redress to perfection. Let us review the principles established by that great man, and other judges. His principles in this respect, were principally derived from the Roman law; and there certainly is a striking likeness between the civil and our law respecting these actions. That law, when speaking of actions quasi ex contractu, under the division of innominate contracts, has a kind of action, termed actio infactum or in prescriptis verbis, answering to our action on the case. Under this class they had their condictio indebiti, or to recover back money paid by mistake, and condictio causa data nonsecuta, or to recover back money on account of the failure in the consideration. The cases of quasi contracts rested upon the same ground with implied assumpsits. The principles of the two laws were in some respects different. Lord Mansfield's great predilection for the Roman law, it is believed, carried him too far upon the main ground in the case of Moses v. M'Farlane, 2 Burr. 1005.[2] One question in that case, was, whether the action could be maintained, the action having previously been sub judice and money paid under the authority of a court of competent jurisdiction. The opinion of the judge was, that, notwithstanding this objection, an action for money had and received, might be supported. Though the general principles and reasoning of Lord Mansfield in that case were characteristic of a great and comprehensive mind, we cannot agree with him. Upon the principle, that it had been *Page 441 
previously litigated, the action ought not to have been sustained. This seems to be the decided opinion of Lord Kenyon.[1] The reasoning of Lord Mansfield in other respects, is a great present to the profession. The ideas he entertained respecting this action were, that it lies wherever ex œquo et bono, the defendant ought to refund, and where consistent with equity and conscience he cannot retain the money in his hands.[2] In 2 Term Rep. 370, Buller says that a person cannot recover in this action unless the case would be thought equitable, and so determined if it were before a court of equity. Hence Lord Mansfield in Burr. 1005, Cowp. 197, as well as Judge Buller, compare it to a bill in equity.
From Lord Holt's time, we find the judges frequently stating that these actions had been extended of late years. In the case of Holms v. Hall,[3] Holt complains of these extensions, and observes that "nobody would more willingly check them than I would." I am far from agreeing with Lord Holt, for it would seem that the extension of this action has contributed to expedite justice. It is concise, unperplexed with verbose pleading, and has almost rendered bills in equity unnecessary.
Useful as this form of action is, it should not be forgotten that the courts will never suffer the general terms in which it is conceived to produce surprise on the opposite party,[4] nor allow of the action in case of a special warranty of goods,[5] or where a special contract is still open.[6]
In the case of Moses v. M'Farlane,[7] Lord Mansfield says, "that the extending of the action for money had and received depends on the notion of fraud; as if one man takes another's money to do a thing, and refuses to do it, it is a fraud, and he may sue upon the agreement, or may disaffirm it ab initio by reason of fraud, and bring an action for money had and received. This in general is correct, but the decisions have gone further, and approach nearer to the civil law. The decisions seem to rest on one or the other of two principles, fraud or implied warranty.
From the opinion entertained in the case of Moses v. M'Farlane, it will easily be perceived that the *Page 442 
notion of fraud, forms the ground of most of these kind of condictious actions.
Those referable to this head are, —
1st. To recover money paid by mistake, as in Skin. 411, 412, pl. 7; 1 Salk. 22, pl 2. It is fraudulent to retain money thus erroneously paid. But it must be a mistake as to fact, and not law.[8]
2d. To recover money paid under a void authority, or upon an agreement declared void for irregularity by the legislature, or by them declared void, being against public policy, as in 1 Vin. Ab. 268, pl. 5; 1 Term Rep. 732; having been paid under a wrong impression, it is fraudulent to retain.
3d. When a defendant gets money into his hands which ought in equity to belong to the plaintiff, without having had any kind of contract with him, and which it were fraudulent in him to retain, as in 2 Lord Ray.; Burr. 1005, 1007; Buller's N. P. 130; 1 Term Rep. 403, 387; Cowp. 419, 197; Bay, 56.[1]
4th. Where money has been paid by compulsion, or constraint, as in Str. 915; 4 Term Rep. 485, it is a fraud to retain it.
5th. In cases of fraud apparent in the original transaction, as in Skin. 411, 412; 1 Vin. Ab. 268, pl. 4; 1 Salk. 22; 11 Mod. 146, 147; Cowp. 805; 4 Term Rep. 182; 1 H. B. 665; or for money got through imposition, extortion, oppression, or undue advantage taken of the plaintiff's situation. Here again is fraud, 1 Term Rep. 286.
6th. Where the consideration has failed as for earnest when the bargain has fallen through on account of a bargainor's refusal, c. Premiums where a ship did not sail on her voyage, c. 6 Mod. 161; Burr. 1005. In all these cases it is fraudulent to retain the consideration, and thus, in the language of Lord Mansfield, the notion of fraud was at the bottom.
We will now notice cases in which this action was repelled. It seems to be a general principle pervading all the cases that it lies only where the principles of justice require it, and, not then, if opposed by public policy.
In relation to the first, or where justice did not *Page 443 
require it, because both parties acted with a full knowledge of all the facts and circumstances, and the consideration happened to fail, it was determined that this action would not lie. 1 Esp. Ca. 279; 4 Term Rep. 561; 1 Term Rep. 225. This rule equally holds where the plaintiff and defendant are equally innocent or equally guilty. If the contract be illegal, and the parties be equally guilty, no action can be maintained.[2] Cases where the parties have been equally innocent may be found, as in 1 New Rep. 260. The defendant had obtained a patent for an invention, supposing himself to be the first inventor, he sells to the plaintiff for the term of fourteen years, who enjoys the benefit of it five years, when it is repealed at the instance of another person, who had previously invented it. This action was brought for the consideration paid on account of the failure in the same. The Court conceived the action did not lie, as both parties supposed the patent was good; as there was no fraud nor deception, and as the plaintiff had enjoyed it part of the time. On the part, of the plaintiff, it was insisted that, as the defendant was not the inventor, he never had a right to the invention, and therefore ought to refund. This decision is conformable to the principle, that the plaintiff in ordinary cases can only recover where the defendant cannot conscientiously retain; and conformable to the observations of Lord Mansfield, in Neal v.
Price, Burr. 1354; his words are, "In this action the plaintiff cannot recover the money unless it be against conscience in the defendant to retain it, and great liberality is always allowed in this sort of action;" and, further, "it was a misfortune that had happened without fault or neglect. If there were no neglect in the plaintiff, yet there was no reason to throw off the loss from one innocent man upon another innocent man." Between two innocent men, a court of law or equity will always be neutral, unless the law raises an obligation.[1]
In the case before the Court fraud is not suggested on the part of the defendant, it is proved there was none. Both parties are equally innocent, as in the case above of a patent. 1 New Rep. 260. In the case before the Court the warrant turned out to *Page 444 
be worth nothing, but neither party knew that when it was sold, and one had as good ah opportunity of knowing it as the other. It was also proved that the defendant purchased the warrant of Lytle, so that it is clear, unless some other ingredient exist in this case than fraud, the plaintiff cannot recover. The case of Gates v. Winslow, Mass. Term Rep. 65, if made to apply to personal contracts has narrowed the responsibility of vendors contrary to the late decisions in England, as will be seen presently. The case was, that the defendant had sold land to the plaintiff, for which he made a quitclaim deed, the title proved defective, and this action was brought to recover back the consideration paid. The Court said that "where the parties were equally guilty, or equally innocent, melior est conditio defendentis; as no fraud nor imposition is pretended to have been practised by the defendant, the Court will presume that the parties at the time of the transaction were on equal grounds. Any one who had voluntarily given away a sum of money might as well think of recovering it back as the plaintiff expect to maintain the present action;" and so says the book, where money has been paid voluntarily and understandingly, without fraud, imposition, or deceit, although it were paid without consideration, the law will not compel a payment, but leaves the parties as it finds them.
[1] Co Lit. 214 a.
[2] See 1 Johns. C. 411; 3 Johns. 425; 1 Mass. 117; 1 Term Rep. 619; 1 Bos. Pull. 447.
[1] 2 Ver. 428, 692, 765; 1 Eq. C. 44, pl. 3-5; 1 P. W. 383, 452, 459; 1 Dall. 28, 444; 1 Johns. C. 533; 1 Ves. Jr. 249; Wash. 299, 389; 1 Bay, 211, 246.
[2] See Letters of Junius, Nos. 41, 61.
[1] 7 Term Rep. 269.
[2] Burr. 1005; Cowp. 197.
[3] 6 Mod. 161.
[4] Doug.. 131; Cowp. 414, 807; Camp. 293, 682; 2 Mass. 398;2 Wash. 179.
[5] Cowp. 818.
[6] Doug. 23; 1 Term Rep. 133.
[7] Burr. 1011.
[8] 2 East, 469; contra, Bl. 824; Evans's Essays, 7.
[1] See also 2 Binn. 382; 2 Bay, 80.
[2] Bl. 1073; 1 H. Bl. 65; Skin. 412; Doug. 468; 3 Term Rep. 266.
[1] This is consonant to equitable principles. Wythe, 113, 4 Cr. 177; Hardin, 102; 2 Wash. 119; 1 Bro. C. C. 301; 1 Caines' C. E. 119; 1 Johns. 548, 566. Of two equities, the rule is qui prior est intempore, potior est in jure. 2 Wash. 237; 3 Atk. 93.